RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Kevin J. Larner, Esq. (KL-8627)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800

Counsel to the Plaintiff, Raritan Hospitality, LLC

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RARITAN HOSPITALITY, LLC,<br><br>Debtor. | Case No. 10-42099 (KCF)<br><br>Hon. Kathryn C. Ferguson, U.S.B.J.<br><br>Chapter 11 |
| RARITAN HOSPITALITY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>LIFCO HOTELS, LLC and MICHAEL KONIG,<br><br>Defendants. | Adv. Pro. No. 10-_____ (KCF) |

**COMPLAINT TO PROVE EXTENT AND VALIDITY OF LIENS,
CLAIMS AND ENCUMBRANCES, TO AVOID LIENS AND/OR FOR
DAMAGES**

Plaintiff, Raritan Hospitality, LLC, the within Debtor and Debtor-in-possession (the "Debtor"), by and through its counsel, Riker, Danzig, Scherer, Hyland & Perretti LLP, by way of Complaint to Prove Extent and Validity of Liens Claims and Encumbrances, to Avoid Liens and/or for Damages (the "Complaint") against Lifco Hotels, LLC ("Lifco") and Michael Konig ("Konig" and, collectively with Lifco, the "Defendants"), states as follows:

## JURISDICTION AND VENUE

1.      This is an adversary proceeding against Lifco and Konig seeking a determination regarding the extent and validity of liens, claims and encumbrances asserted by Lifco against the Debtor's real and personal property located at 3050 Woodbridge Avenue, Edison, New Jersey 08837, to avoid liens and/or for damages against one or both of the Defendants.

2.      The United States Bankruptcy Court for the District of New Jersey has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      Venue properly lies in this Court pursuant to 28 U.S.C. § 1409.

4.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## THE PARTIES

5.      The Debtor is a New Jersey limited liability company with an address of 3050 Woodbridge Avenue, Edison, New Jersey 08837.

6.      Lifco is a Nevada limited liability company with an address at 1102 Teaneck Road, Teaneck, New Jersey 07666.

7.      Upon information and belief, Konig is an individual having an address at 1102 Teaneck Road, Teaneck, New Jersey 07666.

8.      At all relevant times herein, Konig was Lifco's Manager.

9.      At all relevant times herein, Lifco was 100% owned by The Philanthropists Charity ("Charity"), for which Konig acts as the Trustee.

10.     At all relevant times herein, Konig made all decisions on behalf of Lifco.

2

4091403.4

## STATEMENT OF FACTS

### A.    Background

11.    On November 2, 2007 (the "Closing Date"), Lifco sold and transferred to the Debtor a hotel business operating under the Holiday Inn flag and land located at 3050 Woodbridge Avenue, Edison, New Jersey 08837 (collectively the "Hotel").

### B.    Lifco's Submission of False Customer Satisfaction Surveys to Franchisor so as to Artificially Raise its OSAT Prior to the Closing Date

12.    At all relevant times prior to the Closing Date, Lifco, Konig, and their employees, agents and representatives, including Myra Rivera ("Rivera"), managed and operated the Hotel.

13.    Upon information and belief, in addition to performing services related to the management and operation of the Hotel, prior to the Closing Date, Rivera was or had been an employee of a healthcare facility owned and/or operated by Konig.

14.    Upon information and belief, prior to the Closing Date, Rivera held herself out as the controller for the Hotel and, until Lifco sold the Hotel to the Debtor on the Closing Date, Rivera was Konig's agent principally responsible for operating the Hotel.

15.    In connection with Lifco's sale of the Hotel to the Debtor, Rivera also held herself out as the General Manager of the Hotel both to the Debtor and, upon information and belief, to Holiday Hospitality Franchising, Inc. ("HHFI"), the franchisor for Holiday Inn hotels, and HHFI's administering agent, InterContinental Hotels Group ("IHG").

16.    Upon information and belief, prior to the Closing Date, Lifco received one or more default notices from IHG because the Hotel's Overall Satisfaction Score ("OSAT"), based on a 12-month average, had fallen below the minimum score required by HHFI.

17.     Failure by Lifco to raise the Hotel's OSAT above the required minimum would have resulted in mandatory property improvements to the Hotel and/or loss of the Holiday Inn franchise.

18.     Upon information and belief, prior to the Closing Date, Lifco's practice was to send IHG the e-mail addresses of guests that stayed at the Hotel, to the extent guests provided their e-mail addresses to Lifco.  IHG would thereafter e-mail customer satisfaction surveys directly to certain of those guests whose e-mail addresses were provided to IHG by Lifco, the results of which would be used to calculate the Hotel's OSAT.

19.     Upon information and belief, prior to the Closing Date, Lifco and/or Konig would receive from IHG, on or about the Wednesday of each week, the Hotel's OSAT, on a weekly basis.

20.     Upon information and belief, after receiving one or more OSAT default notices from IHG prior to the Closing Date, Rivera called a meeting of certain of Lifco's employees and directed the Hotel's front desk personnel to pose as unaffiliated guests of the Hotel and begin submitting false customer survey responses to IHG to artificially raise the Hotel's OSAT above the required minimum level.

21.     Upon further information and belief, to accomplish this task, Lifco employees were directed to enter their and their relative's names and e-mail addresses as if they had been Hotel guests and then to respond by e-mail to the IHG customer satisfaction surveys with high or the highest scores.

22.     The Defendants caused hundreds of false customer satisfaction surveys to be submitted to IHG prior to the Closing Date.

4

23.    Konig has admitted in a sworn statement that "[f]rom time to time employees of Lifco including [a manager], were registered overnight guests at the Hotel and, as such, they responded to OSAT customer satisfaction surveys."

24.    Further, Rivera has admitted in a sworn statement that she and other employees of Lifco "routinely were registered as guests at the Hotel" and that they took that opportunity to "return customer satisfaction surveys to the franchisor."

25.    Upon information and belief, prior to the Closing Date, Rivera routinely instructed Lifco employees to report to her on a weekly or regular basis when they had submitted customer satisfaction surveys to IHG.

26.    Upon information and belief, as a result of Lifco's practice of artificially raising the Hotel's OSAT by causing its employees to submit false customer survey responses to IHG, prior to the Closing Date, the Hotel's OSAT eclipsed the minimum level required by HHFI.

27.    Upon information and belief, prior to the Closing Date but after Lifco had received one or more default notices from IHG and after the Hotel's OSAT rose above the minimum level required by HHFI, Lifco employees were instructed during weekly meetings to continue to submit customer satisfaction surveys to IHG.  This instruction continued until the Closing Date.

28.    Upon information and belief, at all relevant times, Konig directed, sanctioned and encouraged Lifco employees to submit false customer satisfaction surveys to IHG.

**C.    Lifco's Overstatement of its Revenues Prior to the Closing Date**

29.    Upon information and belief, in addition to having its employees submit false customer satisfaction surveys to IHG prior to the Closing Date, Lifco overstated the Hotel's room revenues.

4091403.4

30.    For example, prior to the Closing Date, when the Hotel was overbooked, Lifco would book additional rooms at neighboring hotels, and would treat the payments for those rooms at the other hotels as room revenue for the Hotel despite the fact that the Hotel was not generating these revenues for its rooms.

31.    Upon information and belief, during one night in or about 2007, prior to the Closing Date, Lifco caused approximately 230 rooms to be booked at neighboring hotels, resulting in Lifco's posting of an approximate $23,000 net profit for that single night, despite the fact that the Hotel did not generate these room revenues that evening.

32.    At all relevant times, Konig directed, sanctioned and encouraged Lifco's overstating of revenues for the Hotel.

### D.    Lifco's Failure to Disclose to the Debtor a Law Against Discrimination Lawsuit

33.    Konig and Lifco failed to disclose to the Debtor a lawsuit that was filed against Lifco prior to the Closing Date, which, upon information and belief, Lifco settled sometime on or before the Closing Date.

34.    This lawsuit was brought against Lifco by a disabled guest of the Hotel who used a wheelchair, alleging Law Against Discrimination ("LAD"), The Americans With Disabilities Act ("ADA") and/or related claims, and demanding modifications to the Hotel.

35.    Upon information and belief, this lawsuit was settled for a relatively significant monetary payment to avoid having to make the modifications to the Hotel being sought, which modifications Lifco never made to the Hotel.

36.    At all relevant times, Konig directed, sanctioned and encouraged Lifco's nondisclosure of this lawsuit to the Debtor.

4091403.4

**E.**     **Lifco's Sale of the Hotel to the Debtor**

37.     On or about June 29, 2007, Lifco and the Debtor entered into an agreement for Lifco's sale of the Hotel to the Debtor (the "Sale Agreement").

38.     Konig negotiated and signed the Sale Agreement on behalf of Lifco.

39.     Pursuant to Paragraph 5 of the Sale Agreement, Lifco expressly designated Konig as the sole contact on Lifco's behalf and expressly prevented the Debtor from communicating with any persons other than Konig.

40.     Pursuant to Paragraph 5 of the Sale Agreement, Lifco was required to make various of the Hotel's books and records available for inspection by the Debtor.

41.     Prior to the Closing Date, the Debtor requested that Lifco produce to the Debtor all the documents referenced in Paragraph 5 of the Sale Agreement, as well as other documents.

42.     Pursuant to Paragraphs 14(e) and (f) of the Sale Agreement, Lifco represented to Debtor that, to "[t]he best of [its] knowledge, there are no violations of any law or governmental rule or regulation pending against [Lifco] or the Property, and [Lifco] has complied with all laws and governmental rules and regulations applicable to the Hotel" and that there "are no judgments . . . suits, actions or proceedings pending or, to the best of [Lifco's] knowledge, threatened against [Lifco] or the Property."

43.     Pursuant to Paragraph 14(j) of the Sale Agreement, Lifco further represented to Debtor that "[i]t has no knowledge of any pending or contemplated . . . judicial, administrative or other proceedings affecting the subject matte of this Agreement or any part thereof."

44.     Lifco failed to produce to the Debtor certain documents that were relevant and important to the Debtor's purchase of the Hotel, including (i) the false customer satisfaction surveys that Lifco caused its employees to submit to IHG to artificially inflate the Hotel's OSAT,

(ii) documents related to the overstatement of the Hotel's revenues, and (iii) documents relating to the lawsuit against Lifco alleging LAD, ADA and/or related claims.

45.     Pursuant to Paragraph 1 of the Sale Agreement, Lifco agreed to assign all of its "rights, title and interest" "to the trade names, trademarks and service marks of [Lifco] with respect to the name, trademark or service mark of the 'Holiday Inn.'"

46.     Pursuant to Paragraph 10(i) of the Sale Agreement, Lifco further agreed to provide "all other records and documents necessary to permit the continuance of orderly operation of the Holiday Inn."

47.     Paragraph 33 of the Sale Agreement contained the following language:  "The Seller's and Buyer's obligation to perform under this Agreement is expressly conditioned upon the Buyer's ability to secure at its own expense a written approval from the Holiday Inn franchisor agreeing to:  (a) designate the Buyer as the replacement franchisee for the Seller under the terms of the existing Franchise Agreement or at the request of the Buyer, a new Franchise Agreement, to the extent available from Franchisor[.]"

48.     On the Closing Date, Lifco and the Debtor entered into a Closing Agreement, dated November 2, 2007, which incorporated the Sale Agreement.

49.     Konig negotiated the Closing Agreement on behalf of Lifco.

50.     The Closing Agreement was signed by Konig as Managing Member of Lifco.

51.     The Closing Agreement was drafted by or on behalf of Lifco.

52.     On or around the Closing Date, Konig, as Trustee for Charity, the sole member of Lifco, executed a November 2, 2007 Bill of Sale.

53. Moreover, in his Affidavit of Creditors executed on the Closing Date, Konig swore under oath that Lifco had contracted to sell to Debtor the "Business," defined as the hotel that Lifco operated "under the trade name of Holiday Inn[.]"

54. At no time at or prior to the Closing Date did Lifco, Konig, or any of their employees, agents, or representatives inform the Debtor (i) that Lifco had received default notices from IHG prior to the Closing Date concerning the Hotel's OSAT, (ii) that customer satisfaction survey responses had been submitted to IHG by Lifco's employees, (iii) that Lifco had overstated its room revenues, or (iv) that Lifco was a defendant in a lawsuit alleging LAD, ADA and/or related claims.

55. At no time at or prior to the Closing Date was the Debtor aware (i) that Lifco had received default notices from IHG prior to the Closing Date concerning the Hotel's OSAT, (ii) that Lifco's employees had submitted customer satisfaction survey responses to IHG, (iii) that Lifco had overstated its room revenues, or (iv) that there was a lawsuit against Lifco alleging LAD, ADA and/or related claims.

**F.** **The Debtor's Payments and Obligations Made or Incurred on and After the Closing Date**

56. On the Closing Date, the Debtor agreed to pay Lifco $16.7 million for the Hotel, consisting of a $4 million payment to Lifco on the Closing Date, the Debtor's execution of a Promissory Note in favor of Lifco (the "Note"), as well as a Mortgage and Security Agreement (the "Mortgage"), both dated November 2, 2007.

57. The Debtor paid Lifco the sum of $4 million on the Closing Date.

58. Since the Closing Date, and through and including September 2010, the Debtor has made monthly payments pursuant to the Note and the Mortgage of principal and interest to Lifco, each in the amount of $81,826.28.

4091403.4

59.     In connection with its purchase of the Hotel from Lifco, and in reliance upon the misrepresentations and omissions on behalf of Lifco and Konig, the Debtor entered into a franchise agreement with HHFI and has obligated itself and expended costs in connection with maintaining, operating, and improving the Hotel.

60.     Shortly after the Closing Date, and after the 12-month residual effect of Lifco's artificially inflating of the Hotel's OSAT had worn off, HHFI issued default notices to the Debtor stating that the Hotel's OSAT had fallen below the minimum score required by HHFI.

61.     The reason that the Debtor's OSAT was now lower than that achieved by Lifco prior to the Closing Date was because Lifco had artificially increased its OSAT by having its employees submit false customer satisfaction surveys to IHG.

62.     In order to cure the defaults, the Debtor expended more than $1.5 million in capital improvements to the Hotel and was required to make further multi-million dollar improvements to the Hotel.

63.     These capital improvement expenses incurred and paid for by the Debtor should have been paid by Lifco prior to the Closing Date.

64.     However, Lifco never paid for these capital improvements prior to the Closing Date because Lifco had artificially inflated the Hotel's OSAT by having its employees submit false customer satisfaction surveys to IHG.

65.     Additionally, after the Closing Date, the same attorney that had filed the LAD, ADA and/or other claims against Lifco prior to the Closing Date filed similar claims against the Debtor now on behalf of a different plaintiff who had stayed at the Hotel, and demanding the same modifications be made to the Hotel that Lifco had never made and of which Lifco never informed the Debtor.

**G.    Lifco's Refusal to Consent to Solar Panels on the Hotel**

66.    In or around the summer of 2009, the Debtor sought to have solar panels installed at the Hotel to generate energy to be used by the Hotel and to sell back any excess energy to the Debtor's utility provider.

67.    Installation of the solar panels would have saved the Debtor significant monthly expenses and generated utility credits, and created a more "green" Hotel in accordance with the initiative promoted and advanced by HHFI and IHG, to foster goodwill with the Hotel's guests and to generate additional bookings for the Hotel.

68.    In or about August 2009, the Debtor contacted Lifco seeking permission and authorization to install solar panels at the Hotel.

69.    In response, Lifco requested a copy of the proposed agreement between the Debtor and its solar panel provider.

70.    The Debtor provided Lifco with a copy of the proposed agreement and asked that Lifco execute the mortgagee's consent to the installation of the solar panels.

71.    Despite repeated requests, Lifco neither executed the mortgagee's consent nor provided any explanation as to why it would not provide its consent.

**H.    The Debtor's Bankruptcy Filing/Lifco's Failure to File a Uniform Commercial Code Financing Statement**

72.    On October 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey.

73.    Prior to the Petition Date, Lifco never filed any Uniform Commercial Code Financing statements ("UCC Financing Statement") in connection with its sale of the Hotel to the Debtor.

4091403.4

I.      <u>**Lifco's Claims In The Debtor's Bankruptcy Case**</u>

74.     On November 15, 2010, Lifco filed a proof of claim [Claim No. 7] in the Debtor's

bankruptcy case, asserting a claim against the Debtor in the amount of $12,142,768.06, plus

counsel fees, late charges and interest ("<u>Lifco's Proof of Claim</u>").

<u>**COUNT ONE**</u>
**(Avoidance of Liens)**
**(as Against Lifco and Konig)**

75.     The Debtor repeats and re-alleges the allegations contained in each and every

prior paragraph as if fully set forth at length herein.

76.     By failing to file a UCC Financing Statement prior to the Petition Date, Lifco

failed to perfect any security interests in the Debtor's personal property.

77.     Pursuant to Section 544 of the Bankruptcy Code, the Debtor has the rights and

powers of a hypothetical lien creditor and may avoid any security interests granted by the Debtor

to third parties that were not properly perfected as of the Petition Date.

78.     Lifco's unperfected security interests in the Debtor's personal property are

avoidable and recoverable by the Debtor for the benefit of the estate, pursuant to 11 U.S.C.

§§ 544 and 550.

WHEREFORE, the Debtor demands judgment against Lifco as follows:

a.      avoiding Lifco's security interests in personal property of the Debtor;

b.      recovering and preserving, for the benefit of the estate, the security
        interests asserted by Lifco in personal property of the Debtor;

c.      awarding attorneys' fees and costs; and

d.      for such other and further relief as the Court deems just and equitable.

4091403.4

## COUNT TWO
### (Lien Stripping)
### (as Against Lifco)

79.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

80.    Pursuant to 11 U.S.C. § 506(a), Lifco has a secured claim against the Hotel to the extent of the value of Lifco's interest in the Debtor's interest in the Hotel, or to the extent of the amount subject to setoff, and Lifco has an unsecured claim to the extent that the value of Lifco's interest or the amount subject to setoff is less than the amount of Lifco's allowed secured claim.

81.    The value of the Property is less than the amount of Lifco's Proof of Claim.

82.    The Debtor has various setoffs against Lifco.

WHEREFORE, the Debtor demands judgment against Lifco as follows:

a.    determining the amount of Lifco's allowed secured claim;

b.    determining the amount of Lifco's allowed unsecured claim, if any;

c.     determining the amount of the Debtor's setoff;

d.    awarding attorneys' fees and costs; and

e.    for such other and further relief as the Court deems just and equitable.

## COUNT THREE
### (Equitable and Legal Fraud)
### (as Against Lifco and Konig)

83.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

84.    Upon information and belief, with the intent to defraud the Debtor, Lifco and Konig, directly and as co-conspirators with each other and/or with employees of other entities owned and/or controlled by Konig (collectively, the "Co-conspirators") knowingly made false and fraudulent representations, statements, and/or promises and/or intentionally omitted material

4091403.4

information at and/or prior to the Closing Date, including, without limitation, materially misrepresenting or omitting (i) that no default notices regarding the Hotel's OSAT had been sent to Lifco, (ii) that the OSAT for the Hotel was and had been above the required minimum score required by HHFI, (iii) that Lifco was in full compliance with its franchise agreement with HHFI, (iv) that Lifco was entitled to maintain the Holiday Inn flag, (v) that revenue for the Hotel was not overstated, and (vi) that no lawsuit alleging LAD, ADA and/or related claims had been pending, filed or threatened against the Hotel.

85.    Upon information and belief, the Co-conspirators knew the aforementioned material representations were false and/or were omitted but nonetheless ratified the same.

86.    Lifco and Konig had a duty to disclose that their representations, statements and promises to the Debtor were false but failed to do so.

87.    Instead, upon information and belief, Lifco and Konig took affirmative steps to and/or did conceal and/or suppress the falsity of their representations, statements, omissions and promises from  the Debtor.

88.    Konig made himself and/or Rivera the sole and/or primary contacts for the Debtor in connection with the Debtor's purchase of the Hotel from Lifco, thereby enabling Konig to control the information that was provided to the Debtor.

89.    Upon information and belief, Lifco and Konig knew that that the sale of the Hotel to the Debtor would likely not close if the truth were disclosed to the Debtor.

90.    Upon information and belief, Lifco and Konig knew if Lifco's low OSAT score did not get remedied, then Lifco would have been required to make substantial capital improvements to the Hotel or the Hotel would lose the Holiday Inn flag, which Lifco and Konig knew would significantly devalue the Hotel.

91.     Had the Debtor known that the above-referenced representations, statements and promises were false, or would have known about the omissions, the Debtor would not have closed on the transaction and/or would have paid significantly less for the Hotel.

92.     Upon information and belief, Lifco and Konig further knew that if Lifco disclosed to the Debtor the lawsuit against the Hotel alleging LAD, ADA and/or related claims, then Lifco would have been required to make the required capital improvements to the Hotel or the Hotel would potentially lose the Holiday Inn flag, which Lifco and Konig knew would significantly devalue the Hotel.

93.     The Debtor relied on the false representations, statements, omissions, and promises made by Lifco and Konig.

94.     As a result of the above-referenced material misrepresentations and/or omissions, Lifco and Konig were unjustly and improperly enriched, and the Debtor incurred damages, including without limitation, damages resulting from: (i) the Debtor's agreeing to pay $16.7 million for the Hotel, (ii) the Debtor's paying a $4 million downpayment on the Closing Date, (iii) the Debtor's execution of the Note and Mortgage, and (iv) the Debtor's paying Lifco the sum of $81,826.28 per month in principal and interest between the Closing Date and September 2010.

95.     Additionally, the Debtor was further damaged by: (i) obligating itself to HHFI and others in connection with purchasing, maintaining, and operating the Hotel, (ii) expending over $1.5 million in capital improvements to the Hotel after the Closing Date, and (iii) incurring such further and additional costs in connection with this proceeding.

96.     The actions of Lifco and Konig, directly and as Co-conspirators as set forth herein, constitute equitable and/or legal fraud.

4091403.4

WHEREFORE, the Debtor demands judgment against Lifco and Konig as follows:

    a.     awarding compensatory damages;

    b.     awarding consequential damages;

    c.     disgorgement of all of the proceeds fraudulently obtained by Lifco and Konig;

    d.     equitably modify, reform and reduce the amount of the Note and Mortgage;

    e.     awarding punitive damages;

    f.     awarding attorneys' fees and costs;

    g.     awarding prejudgment and post-judgment interest; and

    h.     for such other and further relief as the Court deems just and equitable.

## COUNT FOUR
### (Civil Conspiracy to Commit Fraud)
### (as Against Lifco and Konig)

97.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

98.    At various times and places, the Co-conspirators conspired to conduct and participate in the fraud alleged above.

99.    At various times and places, the Co-conspirators actually conducted and participated in said fraud.

100.    As a result of said fraud, the Debtor was damaged.

101.    As a result of their participation as Co-conspirators in said fraud, Lifco and Konig are jointly and severally liable for all damages resulting from said fraud.

4091403.4

WHEREFORE, the Debtor demands judgment against Lifco and Konig, jointly and severally, as follows:

a.      awarding compensatory damages;

b.      awarding consequential damages;

c.      disgorgement of all of the proceeds fraudulently obtained by Lifco and Konig;

d.      awarding punitive damages;

e.      awarding attorneys' fees and costs;

f.      awarding prejudgment and post-judgment interest; and

g.      for such other and further relief as the Court deems just and equitable.

## COUNT FIVE
### (Negligent Misrepresentation and Concealment)
### (as Against Lifco and Konig)

102.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

103.    To the extent the misrepresentations, statements, promises and omissions referred to earlier were not intentional, they were negligent.

104.    Upon information and belief, the Co-conspirators knew, or should have known, that the aforementioned material representations, statements and promises were false.

105.    Upon information and belief, the Co-conspirators knew and/or should have known, prior to the Closing Date, that Lifco had received one or more default notices from IHG, that the Hotel's OSAT had been artificially inflated, that Lifco had overstated its revenues and that Lifco was a defendant in a lawsuit alleging LAD, ADA and/or related claims.

106.    Lifco and Konig had a duty to disclose this material information to the Debtor but negligently failed to do so.

4091403.4

107.    The Debtor relied on the negligent misrepresentations, statements, omissions, and promises made by Lifco and Konig.

108.    Lifco and Konig knew or should have known that the Debtor would rely upon these material misstatements and omissions.

109.    As a result of the above-referenced negligent material misrepresentations and/or omissions, Lifco and Konig were unjustly and improperly enriched and the Debtor was damaged, including without limitation, damages resulting from: (a) the Debtor's agreeing to pay $16.7 million for the Hotel, (b) the Debtor's paying a $4 million downpayment on the Closing Date, (iii) the Debtor's execution of the Note and Mortgage, and (iv) the Debtor's paying Lifco the sum of $81,826.28 per month in principal and interest between the Closing Date and September 2010.

110.    Additionally, the Debtor was further damaged by: (a) obligating itself to HHFI and others in connection with purchasing, maintaining, and operating the Hotel, (b) the Debtor's expending over $1.5 million in improvements to the Hotel after the Closing Date, and (c) the Debtor's incurring of such further and additional costs in connection with this proceeding.

WHEREFORE, the Debtor demands judgment against Lifco and Konig as follows:

a.      awarding compensatory damages;

b.      awarding attorneys' fees and costs;

c.      awarding prejudgment and post-judgment interest; and

d.      for such other and further relief as the Court deems just and equitable.

## COUNT SIX
### (Unjust Enrichment)
### (as Against Lifco and Konig)

111.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

4091403.4

112.    Through their wrongful, intentional and/or negligent conduct referenced above, Lifco and Konig were unjustly enriched and the Debtor was damaged.

113.    As a result, Lifco and Konig have been unjustly enriched at the Debtor's expense.

WHEREFORE, the Debtor demands judgment against Lifco and Konig, jointly and severally, as follows:

a.    awarding compensatory damages;

b.    disgorgement of all of the proceeds fraudulently obtained by Lifco and Konig;

c.    awarding attorneys' fees and costs;

d.    awarding prejudgment and post-judgment interest; and

e.    for such other and further relief as the Court deems just and equitable.

## COUNT SEVEN
### (Breach of Contract)
### (as Against Lifco)

114.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

115.    The Debtor and Lifco entered into a contract pursuant to which Lifco was obligated to, among other things, make certain disclosures to the Debtor.  Specifically, the contract required that Lifco and/or Konig to provide the Debtor with, among other things, (i) notices of Lifco's default under its franchise agreement, (ii) true and complete financial information (including as to revenue), and (iii) copies of the lawsuit that had been filed against Lifco.

116.    The contract further required Lifco to transfer to the Debtor the Hotel that properly carried the Holiday Inn trade name and service marks.

4091403.4

117.    Lifco breached its contract with the Debtor by, among other things: (i) failing to notify the Debtor of any notices of default and/or advising the Debtor it had received no notices of default, (ii) failing to provide true and complete financial information concerning revenue, (iii) artificially inflating the Hotel's OSAT, (iv) failing to deliver the Hotel with a properly-authorized Holiday Inn trade name and service marks and (iv) failing to disclosure the lawsuit that had been filed against Lifco.

118.    As a result of this breach, the Debtor was damaged.

WHEREFORE, the Debtor demands judgment against Lifco as follows:

a.    awarding compensatory damages;

b.    awarding attorneys; fees and costs;

c.    awarding prejudgment and post-judgment interest; and

d.    for such other and further relief as the Court deems just and equitable.

### COUNT EIGHT
**(Breach of Covenant of Good Faith and Fair Dealing)**
**(as Against Lifco)**

119.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth at length herein.

120.    The Debtor and Lifco entered into a contract.

121.    Inherent in the contract between the Debtor and Lifco was the covenant of good faith and fair dealing.

122.    Lifco breached the covenant of good faith and fair dealing, all as further set forth herein.

123.    As set forth above, Lifco's actions were knowing and reckless.

124.    As a result, the Debtor was damaged.

WHEREFORE, the Debtor demands judgment against Lifco and Konig as follows:

a.    awarding compensatory damages;

b.    awarding consequential damages;

c.    disgorgement of all of the proceeds fraudulently obtained by Lifco and Konig;

d.    awarding punitive damages;

e.    awarding attorneys' fees and costs;

f.    awarding prejudgment and post-judgment interest; and

g.    for such other and further relief as the Court deems just and equitable.

## COUNT NINE
### (Objection to Lifco's Proof of Claim/Extent and Validity of Lifco's Liens, Claims and Encumbrances)

125.    The Debtor repeats and re-alleges the allegations contained in each and every prior paragraph as if fully set forth herein.

126.    By way of this Complaint, and pursuant to Fed. R. Bankr. P. 3007(b), the Debtor hereby objects to Lifco's Proof of Claim.

127.    WHEREFORE, the Debtor demands judgment against Lifco as follows:

a.    fixing the amount of Lifco's Proof of Claim;

b.    determining the extent and validity of Lifco's liens and claims against the Debtor's Hotel;

c.    awarding the Debtor costs and expenses, including reasonable attorneys' fees; and

d.    for such other and further relief as the Court deems just and equitable.

4091403.4

Dated:       December 10, 2010
              Morristown, New Jersey

By: /s/  Joseph L. Schwartz
RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

Attorneys for Plaintiff, Raritan Hospitality, LLC

4091403.4